GEORGE H. KELLOGG, Appellee, v. STORY COUNTY et al., Appellants.

No. 42421.

DECEMBER 11, 1934.

REHEARING DENIED MARCH 8, 1935.

Jeffrey C. Hougen, County Attorney, and Earle S. Smith, for appellants.

C. A. Smedal, for appellee.

PER CURIAM.—Appellee George H. Kellogg was elected county superintendent of Story county for a three-year term commencing September 1, 1930. He duly qualified as by law required. On January 30, 1931, the board of supervisors, at a regular meeting thereof, fixed his salary at $2,100 per year for the three-year term for which he had been elected. Subsequently and on March 1, 1932, the appellant board of supervisors at a regular meeting adopted a resolution reducing the salary of appellee from $2,100 to $1,800 per year, making the same effective as of March 1, 1932. This action is to recover the difference between $2,100 and $1,800 from March 31, 1932, to September 1, 1933.

It is the contention of appellants that by the provisions of subdivision 10 of section 5130 of the Code of 1931, boards of supervisors are authorized to fix the compensation for county and town-

ship officers where not otherwise provided by law at any general meeting of the board and to provide for the payment thereof. It is provided by section 5232 of the Code that each county superintendent of schools shall receive an annual salary of not less than $1,800 per year and such additional compensation as may be allowed by the board of supervisors in each particular county.

The question is strictly one of statutory construction. It is true that both the words "salary" and "compensation" are used in section 5232. They are, it seems to the court, used without differentiation. The compensation to be awarded to the county superintendent is in the nature of salary, and any amount added by the board to the minimum provided by the statute must be treated as a part of such salary. It is the thought of appellants that the authority conferred upon boards of supervisors by subdivision 10 of section 5130 is plenary and confers specific authority upon such boards to alter, change, and fix the salary of county superintendents at any regular meeting thereof. Such could hardly have been the intention of the legislature. Such authority would introduce confusion and uncertainty in the matter of salaries. The power obviously intended to be conferred by the legislature upon boards of supervisors is to, at any regular meeting of the board, fix the salary of the county superintendent and others, not that it may be fixed at the will of the board at any or at each successive regular meeting thereof. When once fixed for the term, the power of the board of supervisors was at an end. Holmes v. Lucas County, 53 Iowa 211, 4 N. W. 918; Goetzman v. Whitaker, 81 Iowa 527, 46 N. W. 1058. Having at a prior regular meeting of the board of supervisors fixed the salary of the appellee county superintendent at $2,100 per year, it could not, at any subsequent or on successive regular meetings of such board, alter or change the salary thus fixed during the term of office for which appellee was elected. Such construction of the statute removes doubt and uncertainty as to the salaries of officers referred to in the statute. Section 5130 covers a variety of matters of which subdivision 10 is a small part. The construction adopted would seem best calculated to give effect to the intention of the lawmakers. The judgment entered below is, accordingly, affirmed.—Affirmed.

KINTZINGER, J. (dissenting)—The question for consideration is whether or not the board had the power to reduce the salary of the

superintendent after once fixing it at $2,100 per year, in January, 1931.

In the absence of any prohibition or restrictions by the Constitution or statutes of the state, the compensation of a municipal officer may be changed by the proper authorities, and such change may apply to officers then serving as well as those thereafter elected. 43 C. J. 699, section 1163; Iowa City v. Foster, 10 Iowa 189.

When, however, restrictions against changing the salaries exist, either in the Constitution or the statutes, the compensation of the public officer fixed by law cannot be diminished during the term of office. 43 C. J. 701, section 1169; Purdy v. Independence, 75 Iowa 356, 39 N. W. 641.

.It is conceded there is no constitutional or statutory provision prohibiting the board from raising or lowering the salary of the county superintendent of schools during his term of office. It may also be assumed that the board of supervisors under the statute has authority to fix the annual salary of the county superintendent of schools at any regular meeting of the board. Code, sections 5232 and 5130. Section 5232 provides that:

"Each county superintendent of schools shall receive an annual salary of not less than eighteen hundred dollars, and such additional compensation as may be allowed by the board of supervisors in each particular county, but in no case to exceed three thousand dollars."

Subdivision 10 of section 5130 provides that:

"The board of supervisors *at any regular meeting shall have power:* * * * To fix the compensation for all services of county and township officers *not otherwise provided by law,* and to provide for the payment of the same." (Italics ours.)

These two provisions clearly indicate that where a salary exceeds $1,800 per year, it is not "otherwise provided by law." Therefore the fixing of such salary comes within the provisions of section 5130, subdivision 10, and section 5232, under which the board has power to fix the same *"at any regular meeting."*

The Constitution and statutes of this state prohibit increasing or reducing the salaries of certain public officers in this state during their term of office. Constitution, article 5, section 9; article 3, section 25; Code, section 5672. The salaries of the officers included

within these constitutional and statutory provisions cannot be changed during the term of office. These provisions clearly imply that the legislature, board of supervisors, city council, or other boards, having the authority to employ officers and fix salaries, are not prevented from increasing or reducing the salaries of public officers not included within those inhibitions.

It is the general rule that where the power to fix the compensation of public officers had been delegated to a county board, in the absence of any constitutional or statutory prohibition, the compensation of such officers may be changed during their term of office. 46 C. J. 1020; 22 R. C. L. 553; Iowa City v. Foster, 10 Iowa 189; Knappen v. Barry County Sup'rs., 46 Mich. 22, 8 N. W. 579; State v. Hill, 32 Minn. 275, 20 N. W. 196; Douglas County v. Timme, 32 Neb. 272, 49 N. W. 266; State v. Kennard, 38 N. D. 612, 166 N. W. 514; Shaw v. Smith County (Tex. Com. App.) 29 S. W. (2d) 1000, 70 A. L. R. 1046; Kollock v. Dodge, 105 Wis. 187, 80 N. W. 608; Yuma County v. Sturges, 15 Ariz. 538, 140 P. 504; Warrenton v. Bradshaw, 27 Ga. App. 298, 108 S. E. 167; Hall County v. Quillian, 32 Ga. App. 586, 124 S. E. 143; Whitthorne County, Judge v. Turner, 155 Tenn. 303, 293 S. W. 147; Diedrich v. Warren, 213 App. Div. 406, 210 N. Y. S. 49; People ex rel. Smith v. Board of Police Com'rs, 55 Hun 611, 8 N. Y. S. 725; State ex rel. Mial v. Ellington, 134 N. C. 131, 46 S. E. 961, 65 L. R. A. 697; Butler v. Pennsylvania, 10 How. 402, 13 L. Ed. 472; Carver v. Wheeler County (Tex. Civ. App.) 200 S. W. 537.

It is contended by appellee that the fixing of plaintiff's salary in January, 1931, and the rendering of the services during his term of office constituted a contract between the board of supervisors and himself under which he is entitled to recover the amount of the salary first fixed, and that having fixed the salary at a time when the board was authorized so to do, its power to change the same during the term was exhausted. It is the general rule, however, that the performance of services required by the duties of a public office are not in their nature contractual. Butler v. Pennsylvania, 10 How. 402, 13 L. Ed. 472, and other cases hereinabove cited.

This doctrine was recognized by this court in Iowa City v. Foster, 10 Iowa 189. In that case we said:

"The principal question presented * * * is whether the council of Iowa City had the authority, * * * to change the compensation of the treasurer * * * during the term of office for which

he had been elected. The answer to this question depends upon another, which is, whether he is a public officer, or an officer of a public corporation, or whether he is the officer of a private corporation. That a town or city is a public corporation, there can be no doubt. Nor can there be any that the office and the compensation of such officers are subject to the control of the body which creates or controls the office and the officer, such as the legislature, or the municipal council, or the like, according to the nature of the case. The principle is that public officers, and the officers of public corporations, are created for the public benefit, and that they and their offices, duties and emoluments, are governed by considerations relating to the common good, *and that there is nothing in the nature of contract pertaining to them*, in the sense of the constitution. * * * The compensation to which Foster was entitled, therefore, was subject to the action of the local legislature or council of the city." (Italics ours.)

In Purdy v. Independence, 75 Iowa 356, 39 N. W. 641, 642, this court said:

"It was insisted, however, that plaintiff rendered the services under the contract, and as a consequence he is entitled to no compensation whatever, if it was unlawful. But that position cannot be maintained. It assumes that the services were performed in pursuance of the contract. But that is not the fact. *The performance of the services was imposed upon plaintiff by the ordinance as a duty of his office*, and it was performed in obedience to that requirement. The contract had no relation to the performance of the duty, but had reference alone to the amount of compensation which should be paid for the services." (Italics ours.)

In Butler v. Pennsylvania, 10 How. 402, 418, 13 L. Ed. 472, loc. cit. 479, the United States Supreme Court quotes with approval from the case of Commonwealth v. Bacon, 6 Serg. & R. page 322, as follows:

"These services * * * rendered by public officers, *do not in this particular partake of the nature of contracts, nor have they the remotest affinity thereto*. As to a stipulated allowance, that allowance, whether annual, per diem, or particular fees for particular services, depends on the will of the law-makers; and this, whether it be the legislature of the State, or a municipal body empowered

to make laws for the government of a corporation. This has been the universal construction, and the constitution puts this question at rest in the provision for the salary of the Governor and judges of the Supreme Court, and of the presidents of the Courts of Common Pleas. The Governor is to receive at stated times, for his services, a compensation which shall neither be increased nor diminished during the period for which he shall have been elected. The judges and presidents shall at stated times receive for their services an adequate compensation, to be fixed by law, which shall not be diminished during their continuance in office. * * * It is apparent that the compensation of the Governor and judges is a matter of constitutional provision,—that of all other officers is left open to the legislature. The allowances, the compensation, the salary, the fees of all other officers and members of the legislature, depend on the legislature, who can and who do change them, from time to time, as they conceive just and right."

Likewise in Butler v. Pennsylvania, 10 How. 402, 418, 13 L. Ed. 472, loc. cit. 479, the court quotes with approval from the case of Commonwealth v. Mann, 5 Watts & S. page 418, as follows:

"The point that it is a contract, or partakes of the nature of a contract, will not bear the test of examination."

The court also, in the case of Butler v. Pennsylvania, supra, quotes with approval from the case of Barker v. Pittsburgh, 4 Pa. (4 Bar) 51, as follows:

"*That there is no contract express or implied for the permanence of a salary*, is shown by the constitutional provision for the permanence of the salaries of the Governor and judges as exceptions." (Italics ours.)

In Knappen v. Barry County Supervisors, 46 Mich. 22, 8 N. W. 579, 580, the court said:

"The fixing of a salary does not constitute a contract between the county and its officer; and the legislative authority is ample so far as salary is not already earned by the performance of services, except when otherwise provided by the constitution."

In Shaw v. Smith County (Tex. Com. App.) 29 S. W. (2d) 1000, 1002, 70 A. L. R. 1046, the court said:

"As the amount fixed was within the discretion given by law, it is not within the power of the courts to interfere. Besides, appellee was aware of the court's action, and, if the compensation was too small, he was not compelled to perform the services, and, having done so, he cannot complain. It may be that the compensation fixed was too small and an injustice done appellee, but, on the other hand, the compensation may have been sufficient under the then existing condition; at any rate, the commissioners' court has exercised the discretion granted by law, and this court is powerless to interfere."

In the case of Kollock v. Dodge et al., 105 Wis. 187, 80 N. W. 608, 611, the court said:

"It is well settled that, in absence of any prohibition or restriction, the term of office and the compensation of the officer may be changed by the proper authority, and such change will apply to officers then in office as well as to those thereafter selected."

In Carver v. Wheeler County (Tex. Civ. App.) 200 S. W. 537, loc. cit. 538, the court said:

"While the holder of a public office is vested with certain rights in reference thereto, being entitled to hold the same and receive the emoluments and compensations incident to the discharge of the duties of the office, and may defend his rights against others, yet the relation between the office holder and the government under which he holds office *is not that of employer and employee,* and their respective rights are not to be determined by the application of the general rules of contracts of employment. So that it is universally held that in the absence of some inhibition by some superior law, the governing body may abolish the office or change the compensation to be paid the office holder at any time, even during the term of the office of an incumbent, provided, of course, the changed rate of compensation cannot be made to apply to services already rendered." (Italics ours.)

There is a well-known rule of law applied in the construction of statutes that under the maxim of "expressio unius est exclusio alterius" the mention of one person is the exclusion of another. Black's Law Dictionary, 463; Co. Litt. 210a. This rule has long been recognized in this state. District Township v. City of Dubuque, 7 Iowa 262; First Nat. Bank of Davenport v. Davies, 43 Iowa 424;

State for use of Estherville v. Hanson, 210 Iowa 773, 231 N. W. 428; Talbot v. Blacklege, 22 Iowa 572; Slane v. McCarroll, 40 Iowa .61; Davis v. Laughlin, 147 Iowa 478, 124 N. W. 876; State v. Andrews, 167 Iowa 273, 149 N. W. 245; Debrot v. Marion County, 164 Iowa 208, 145 N. W. 467.

In the case of District Township v. Dubuque, 7 Iowa 262, loc. cit. 276, this court said:

"If by the language used, a thing is limited to be done in a particular form or manner, it includes a negative that it shall not be done otherwise."

It is our conclusion that the provisions of the constitution and statute prohibiting the increase or decrease in salary of certain public officers indicates that there is no prohibition against the authority to increase or decrease the salaries of other public officers, not included.

Counsel for appellee rely upon Goetzman v. Whitaker, 81 Iowa 527, 46 N. W. 1058, and Holmes v. Lucas County, 53 Iowa 211, 4 N. W. 918, as authority for the rule that where a salary of a public officer has once been fixed it cannot be changed during his term of office. In the former case it appears that the board of supervisors had authority to fix the salary of the county attorney at a certain specific time, namely, in June of each year. The change in the salary there was not made at that time. The authority of the council to fix the salary was limited to its meeting in June. Therefore the authority of the council was exhausted by its action taken at that meeting. Likewise in the case of Holmes v. Lucas County, 53 Iowa 211, 4 N. W. 918. This was an action by the sheriff to recover salary fixed by the board of supervisors at the beginning of his term. Under Code, section 3789, at that time the board of supervisors were authorized to fix the salary of the sheriff. The statute in force at that time did not provide *when* the board should fix the sheriff's salary, and having fixed it once, their power to change the salary was exhausted.

The foregoing cases are distinguishable from the case at bar, in that the board of supervisors, under the statute now in force, has authority *at any regular meeting of the board* to fix the salary of the county superintendent of schools. If the salary fixed under this authority at any regular meeting of the board is raised or lowered, it is necessarily changed, and therefore the board has the power to

make the change during his term of office, provided always that the change is made *at a regular meeting of the board*. The conclusion reached in both of the above cases was correct, because no authority existed to make the change at the time it was made. Anything said in those cases, indicating that the fixing of the salary before or during the term and before the services are performed is contractual, is in the nature of dicta, because such statements were not necessary for the conclusions reached. In the case at bar the authority of the board of supervisors to fix the salary was not limited to any specific time, but included *any regular meeting of the board*. Its authority, therefore, to fix a salary was not exhausted by the action taken in January, 1931, or at any other regular meeting. No actual contract was ever entered into between the board and the superintendent.

"A Municipal corporation may, unless restrained by charter, or unless the employment is in the nature of a contract, reduce or otherwise regulate the salaries and fees of its officers according to its view of expediency and right. Although an officer may be elected or appointed for a fixed period, yet, where he is not bound, and cannot be compelled to serve for the whole time, such election or appointment cannot be considered a contract to hire for a stipulated term. Ordinances fixing salaries are not in the nature of contracts with officers." Dillon, Municipal Corporations, section 170.

*The legislature having delegated to the board of supervisors the authority to fix the salary at any regular meeting, gave the board the same right to do so as the legislature itself would have had. As the legislature was not prohibited by the constitution or statutes from reducing the salary in question, the board was not.* In the exercise of its delegated power, it was authorized to do so *at any regular meeting*. The fact that the fixing of such salary had the effect of reducing the same would not invalidate the action of the board.

I have carefully examined the able brief presented by counsel for appellee. It is my conclusion, however, that under the general rule, the board of supervisors had full authority to fix the compensation of the county superintendent at its regular meeting in March, 1932. Under the exigencies existing at that time, and for the public good in that county, the board of supervisors had ample authority under the law to make the reduction complained of.

For the reasons hereinabove set out, I believe the lower court erred in awarding judgment for plaintiff.