CHARLES GOETZMAN, Appellant, v. J. R. WHITAKER,, Appellant, AND COUNTY OF BOONE, Appellee.

81   527|
88   586|
─────
81   527|
f130  169|

81   527|
f139  215|
f139  216|

1. **Parties to Actions :** CERTIORARI : INTERVENTION : PRACTICE. In a proceeding by *certiorari*, commenced by a resident taxpayer of a county, to test the validity of the action of the board of super-visors, whereby the salary of the county attorney was increased,. the county attorney is a necessary party, and his admission to plead as a party defendant even after the determination of the cause will not be regarded as an abuse of discretion on the part of the trial court.

2. **Acts of Public Officers:** REVIEW : CERTIORARI., A resident taxpayer of a county may maintain a proceeding by *certiorari* for the review of any action of the board of supervisors whereby the amount of his taxes may be increased.

3. **Salary of County Attorney:** WHEN DETERMINED : CHANGE DURING TERM: VALIDITY. The salary of a county attorney hav-ing been determined by the board of supervisors under the provis-ions of Acts, Twenty-first General Assembly, chapter 73, section 11,. cannot thereafter be either increased or diminished during his term of office, even though such determination may have been made under a misapprehension of the law as to such officer's right to fees in criminal cases.

*Appeal from Boone District Court.*—HON. S. M. WEAVER, Judge.

WEDNESDAY, OCTOBER 29, 1890.

PROCEEDING by *certiorari* to test the validity of certain acts of the board of supervisors of Boone county. The facts are stated in the opinion.

*E. L. Green*, for appellant, J. R. Whitaker.

*Crooks & Jordan*, for appellant, Charles Goetzman.

*O. M. Brockett*, County Attorney, for appellee, Boone county.

ROBINSON, J.—Plaintiff is a resident and taxpayer of Boone county. The defendants in the proceeding as it was commenced are Boone county, the auditor and the members of the board of supervisors of Boone county. The appellant Whitaker was permitted to intervene as a party defendant before final judgment was rendered. The petition alleges that the board of supervisors of Boone county, at the June session of 1886, adopted the following: "Resolved by the board of supervisors of Boone county, Iowa, that the salary of the county attorney hereafter to be elected, as provided by the act of the Twenty-first General Assembly, be and the same is hereby fixed at four hundred dollars per annum;" that J. R. Whitaker was duly elected county attorney of Boone county at the general election of the year 1886, and qualified and entered upon the discharge of the duties of the office on the fourth day of January, 1887; that on the eleventh day of April, 1887, the board of supervisors adopted the following: "It being manifest to the board that a mistake was made at its June session, 1886, in naming the county attorney's salary, said board being at that session wrongly informed that said officers would receive fees in criminal cases, and it being undisputed that the salary was named on that basis, it is, therefore, ordered that the further sum of four hundred dollars per annum be added to the amount named at said June session, for the purpose of rectifying the mistake then made;" and that defendants have issued warrants to Whitaker under the resolution last quoted for his salary at the rate of eight hundred dollars per annum. The petition further alleges that the action of April 11 was illegal, and asks that defendants be required to certify to the clerk of

the court a correct transcript of the orders and resolutions of the board of supervisors in relation to fixing the salary in question; that the county auditor be required to show the amount of warrants issued to Whitaker on account of his official salary since January 1, 1887; that the action taken April 11 be reviewed and set aside; and that such further order be made as is right and proper. A writ was issued as prayed, and a return made thereto by the county auditor. The return shows that the action of the board at their meetings in June, 1886, and April, 1887, was as stated in the petition, and that Whitaker was paid one thousand dollars on account of his salary for the first five quarters of his official term. The fourth paragraph of the return is as follows: "*Fourth.* It is further certified and returned as a fact that the salary of the county attorney was at said June session, 1886, intended to be fixed, and intended to be recorded, at eight hundred dollars; but, by mistake, four hundred dollars was deducted from said amount, and the salary was made at four hundred dollars, and the record of said April session was made and entered relative to and in correction of such record of said board at its June session, 1886." The plaintiff moved for judgment on the return; and on the twenty-third day of November, 1888, the motion was taken under advisement to be determined in vacation. On the eleventh day of January, 1889, in vacation, the judge of the court filed his findings to the effect that there should be a judgment of the court declaring the action of the board taken April 11, 1887, to be null and void, and for costs, and giving counsel permission to prepare a form of judgment entry in accordance with the findings. Four days after the findings were filed, and before judgment was rendered, Whitaker filed his application to be made a party defendant, supported by an affidavit showing that he was entitled to the salary allowed the county attorney, and that he was, therefore, interested in the order of the board, which plaintiff was seeking to have set aside.

VOL. 81—34

On the twenty-eighth day of January, 1889, Whitaker filed a motion to set aside the submission made at the preceding November term for the purpose of allowing him to be made a party defendant. At the January term, 1889, to-wit, on the fifteenth day of February, the court set aside the submission, and granted the application of Whitaker. Thereafter, and on the same day, it having been ordered that the defense of the other defendants stands as the defense of Whitaker, the cause was again submitted on the motion of plaintiff, and judgment was rendered setting aside the order of April 11, 1887, as illegal and void. The plaintiff and Whitaker appeal, the appeal of the latter being first perfected.

I.    Before the application of Whitaker to be made a party defendant was granted, objections thereto were made on the ground that the applicant was not a necessary nor a proper party; that his interest in the matter in controversy did not entitle him to be made a party; and that his application was not made in time. The appellant is interested in the order which plaintiff asks to have set aside to the amount of eight hundred dollars. There can be no complete and final adjudication of the matter until appellant has had his day in court. It was said in *Brown v. Bryan*, 31 Iowa, 556, that a railroad company, for whose benefit a tax had been voted, was entitled to intervene in an action brought by taxpayers to enjoin the collection of the tax; and that it was not only a proper but a necessary party to a final and binding determination of the questions involved in the action; and that was true, even though the right to the taxes had not matured. We think Whitaker was entitled to intervene at a proper time. Code, sec. 2683. But it is claimed that his application was not filed in time. It was said in *Henry v. Mill & Elevator Co.*, 42 Iowa, 35, that the intervention must be made before the trial commences, and that it cannot be allowed after that time, nor after a settlement has been effected by the parties to the action. That rule was approved in

1. PARTIES to actions: certiorari: intervention: practice.

*Bank v. Gill*, 50 Iowa, 427.   See, also, *Teachout v. Des Moines Broad-Gauge St. Ry. Co.*, 75 Iowa, 728. We do not think the rule should be rigidly applied where the parties necessary to a determination of the cause are not before the court.   In such a case, where the court might order interested persons to be made parties when their interest becomes known, we think the court may properly sustain an application by such persons to intervene.   In this case, the judgment to be rendered had been determined by the judge before the application to intervene was made, and we do not say that it might not have been properly denied on that ground; but it does not appear that the granting of the application caused any delay in the final decision of the cause.   On the contrary, it is shown that Whitaker was allowed to intervene, that the submission of the cause was set aside, the defense of Whitaker interposed, the cause resubmitted, and final judgment entered on the same day.   We think the court did not err in allowing the intervention in view of the interest which Whitaker had in the result of the litigation.

II.   It is said that the interest of plaintiff is not such as authorizes him to maintain this proceeding.   In *Snyder v. Foster*, 77 Iowa, 640, it was said: "It is well settled that a taxpayer may maintain an action in his own name to prevent unlawful acts by public officers which would increase the amount of taxes he is required to pay, or diminish a fund to which he has contributed."   In *Collins v. Davis*, 57 Iowa, 256, it was said that a taxpayer might maintain a proceeding by *certiorari* to review the action of the city council in reducing the assessment of another taxpayer.   In this case plaintiff shows that he is a resident and taxpayer of Boone county.   If the order complained of is illegal, it will wrongfully increase the expenditures of Boone county, and increase unlawfully the burdens of the taxpayers. The plaintiff is, therefore, entitled to maintain this proceeding under the rule announced in the cases cited.

2. ACTS of public officers: review: certiorari.

III. Section 11 of chapter 73, of the Acts of the Twenty-first General Assembly, contains the following provision: "The county attorneys of the several counties in this state shall be allowed an annual salary, to be fixed by the board of supervisors of their respective counties at their June meeting of each even-numbered year as follows: * * * In counties of over twenty thousand [inhabitants] and under thirty thousand, not exceeding one thousand dollars." The board of supervisors of Boone county were authorized to allow the amount named for the years 1887 and 1888. It is said that the salary in question was in fact fixed by the board in June, 1886, at eight hundred dollars, but by mistake it was recorded as fixed at four hundred dollars, and that the action taken by the board in April, 1887, merely authorized the making of a *nunc-pro-tunc* record. The return of alleged facts certified by the county auditor must be construed in connection with the proceedings of the board as recorded. When so considered, it is clear that the mistake of four hundred dollars to which the return refers was a mistake as to the fees which the county attorney would receive in criminal cases, and not a mistake as to the amount of stated salary which the county would pay; and, therefore, that there was no mistake in the record, but that it correctly represents the action which was really taken. We regard the action of April 11, 1887, as designed to increase the amount allowed at the meeting of June, 1886, for the purpose of making the income of the county attorney equal to the amount the board supposed it would be when the action at the meeting last named was taken. There is no showing that appellant was mistaken as to the compensation which the county attorney would be entitled to receive by virtue of the action of the board when he became a candidate for the office in 1886, when he was elected, and when he qualified and entered upon the discharge of the duties of the office. The mistake of the board was one of law. If the relation between the appellant and the county be

*3. SALARY of county attorney: when determined: change during term: validity.*

regarded as contractual in its nature, the mistake would have afforded appellant no ground for relief. The order in controversy was not made to discharge any legal obligation, and must be regarded as voluntary.

It is said that the law of contracts does not apply to this case, and that the board of supervisors may at any time increase or diminish the salary of the county attorney, even during his term of office. The general rule has been stated as follows: "A municipal corporation may, unless restrained by charter, or unless the employment is in the nature of a contract, reduce or otherwise regulate the salaries and fees of its officers according to its view of expediency and right. Although an officer may be elected or appointed for a fixed period, yet, where he is not bound, and cannot be compelled to serve for the whole time, such election or appointment cannot be considered a contract to hire for a stipulated term. Ordinances fixing salaries are not in the nature of contracts with officers." 1 Dill. Mun. Corp., sec. 170. It was held in *Iowa City v. Foster*, 10 Iowa, 191, that there is nothing in the nature of a contract pertaining to the relation between municipal corporations and their officers. The act which created the office of county attorney provides for the resignation of the officer. Acts, 21st Gen. Assem., sec. 9, ch. 73. Therefore, if the general rule governs in this case, the salary of the county attorney may be changed during his term of office. Section 3789 of the Code allowed the sheriffs of certain counties annual salaries to be fixed by the proper boards of supervisors. Referring to that provision, this court said in *Holmes v. Lucas County*, 53 Iowa, 212, that, although the statute did not prescribe the time when the board should act, yet it might properly do so before the service was rendered; and that the allowance of the salary at the commencement of the official term is demanded by fair dealing. What was said in that case may well be said of the salary of county attorney without regard to the statute; but when that is considered, and the motives which must have prompted its enactment, we must conclude

that it was the intent of the general assembly that the salary of the officer should not be changed during his term of office, but should be fixed before his election. If it may be increased it may be diminished, and in that case it would be within the power of the board of supervisors in many cases to determine who should hold the office by withholding an adequate salary from the person elected to fill it, and thus compelling him to resign. It is for the interest of the public to have the office filled by a competent and worthy person. As a rule, an attorney of ability and experience, established in the practice of his profession, would not assume the duties and burdens of the office, and hence would not be a candidate for it, nor consent to an election to it, unless he knew what salary he could depend upon receiving. It is the privilege of the electors of each county to select their county attorney, but it is a barren one if their will may be thwarted by the board of supervisors in the manner suggested. On the other hand, if the board have the power to increase the salary within the limits fixed by statute at pleasure, it might lead to favoritism and gross abuse. The county attorney is to be elected at the general election of each even-numbered year. The board are required by the statute to fix the salary at their regular meeting held in the preceding June. When the salary is fixed, attorneys will make known their willingness to perform the duties of the office, and the electors can select from the attorneys available the one whom they would prefer to have serve them. It is our opinion that the salary fixed before the officer is elected cannot be changed after his election, and that the salary named in the proceedings of the board of supervisors had at the June meeting, 1886, is the only one to which appellant was entitled, even though it was fixed under a misapprehension of the law. Our conclusion in regard to the legislative intent and considerations of public policy require us to so hold.

The judgment of the district court is AFFIRMED.